Defendant's Appellant, arguing on behalf of the Defendant's Appellant, Mr. Marshall S. Stevens, arguing on behalf of the Defendant's Appellant, Ms. Erin S. Johnson. I think you're right, Mr. Stevens. On behalf of the Appellant, you may proceed. Good morning, Your Honors. The question presented in this case is whether a self-identified citizen report of smelling cannabis in a car ahead at a drive-in can form the basis for a reasonable suspicion for a Terry stub. Was it cannabis or burning cannabis? Burning cannabis. Briefly, since I know you're all aware of the facts, the facts are Mr. Stroph has made a phone call to 9-11. He said he smelled a massive amount of cannabis emanating from the car ahead of him, described the car, and he narrated as the officers responded to that. Officer Moore, the first responding officer, saw the described car, saw the car pull into a mobile gas station, activated his overhead lights. So there's really not a dispute that it's the same car. The dispute is whether or not you had to lay a foundation for how this citizen knew that the odor he detected was burning cannabis. Let's just skip ahead to the judge's order. Judge Tobin found all that beforehand. Because of the overhead lights, that was a Terry stub. We're not prepared to debate that. I think the case law supports him in that. The question is, of course, can a citizen's report of the smell of marijuana without saying that he is an expert in the smell of marijuana, or as the judge's order had said, I am a user of marijuana. I'm a CCI. Sorry? A CCI, a certified cannabis informant. I didn't know such things existed. It's amazing what you pick up on late night television. There's a degree from DeVry. I'm sorry? An online internet university. But that's not important now. Wow. It's always educational coming to court. You learn something every day, don't you? Especially from you, Justice. So you're saying, and I appreciate it, forget about the reasonable suspicion stuff, who the person was, we're really down to the lack of the testimony that is a traditional part of the foundation, the person's familiarity with the smell of the burned cannabis. We don't have that here. Okay. Correct? It's a good part of the case. What I'm asking this court basically to do is make a policy statement, which is that the smell, the assertion of the smell of cannabis is akin to asserting that that's the same as a witness asserting, an informant, an identified informant, asserting that they smell alcohol. It shouldn't be that hard to do, right? I'm sorry? It shouldn't be that hard to do, correct? I don't believe so. I mean, it's certainly culturally extant, as they say. Is there an inference that arises if someone like this individual is willing to go through the motions of calling this in if this person didn't know what it smelled like? That's actually my point. He's saying it in very definite terms. I'm smelling marijuana. I'm smelling something. It's a big white cloud. Cheech looks like he's in the passenger seat, so it probably is marijuana. Or is it just he wouldn't be doing this unless he knew what marijuana smelled like? Isn't that an inference at least? Exactly. And a fair inference. You may quibble about inference versus fact. This is something that this caller gave to the 911 operator as a fact that he knew. For example, the 911 operator gets a call from someone who says, I see a gun. The first instinct of the 911 operator isn't to say, oh, are you a gunsmith? Do you know it's a gun? It's all going to be the totality of the facts, what's reasonable, and it does not have to rise to the level of probable cause. That's the part where I think Judge Tobin went awry. He fell back on all these cases that he's talking about. Officers being able to, because of their expertise, their training, being able to demonstrate probable cause by the smell. Yes, of course, that's true. But here we're not talking about that. We're talking about the lesser standard. Why do we as a public policy matter, why do we want to adapt a lesser standard? So somebody's walking by somebody's house and they think they smell burnt cannabis emanating from somebody's porch. Now we're going to allow search warrants of somebody's house based on that without a foundation? By saying lesser standard, all I meant was the standard which we all know is just reasonable suspicion versus probable cause. That's the part that he got confused, I think. Because of the Terry stop versus probable cause to make an arrest. Right. No, I don't think that Mr. Sterve's statement would have been probable cause. That's all I'm saying. I agree with you. In the context of this case, it's turning out to be reasonable suspicion. We're not saying it is, but I'm just looking at the chain of events and looking at the precedent that could be set. Is this a case of first impression in Illinois? I think so. We certainly couldn't find anything where smelling burning cannabis formed the basis for reasonable suspicion. Did the trial court make any findings about whether or not the defendant was seized? And if so, at what point in time? Certainly by the time the lights went on, which was before anybody could make any smells. The officers could have made any smell observations. So did they block his egress or ingress in any way? No, he specifically found that egress was not blocked, but that by turning out the overhead lights, that was an indication that the defendant would not have been free to go. If you disagree with that, I'll be glad to take that. So if the lights hadn't been turned on and they walked out, and in the process of walking up, they had smelled the marijuana, this would all be moved? Probably not, if you believe that turning out the lights was the motive. I'm saying if there was not a seizure and the car was stopped, they didn't stop the car. It was parked at a gas station. It would have been no different if they went in to get a donut and a coffee, and on the way out they could smell it themselves and walk up to the vehicle. If they're in a place they have the right to be and they smell burning cannabis, why is that a problem? I'm asking you as a state, so if you want to say it's a problem, go ahead. This has all been recorded. Well, I'll tell you what, I may have waived it, but the waiver is no bar to this court. And if you want to find that this was not a stop based on the overhead lights, but that will be a question maybe I should have addressed. I thought that that was a settled matter. We did agree with that, with the defendant on that. Haven't most of the cases, though, required a basis of knowledge over the years? I'm sorry? Haven't most of the cases required a basis of knowledge over the years as to how the person knows that this is contraband or knows they're smelling burning cannabis? Yeah, but that's the point. All those cases have been involving probable cause to arrest. They haven't been reasonable suspicion. You found nothing on reasonable suspicion? Nothing. I did an all-state search. I was looking all over the place for that. I just simply could not find anything. When you say reasonable, do you mean articulable suspicion for purposes of a Terry stop? I'm sorry? You were saying reasonable suspicion as opposed to articulable. I'm sorry, articulable suspicion. Yeah. They're sort of the same thing. So you believe this is a Terry stop procedure or you don't know? It was a Terry stop. I mean, that's what I argued. I mean, you've asked questions about whether or not it could be a consensual encounter, I guess. There's a slippery slope I'm concerned about. Change the facts just slightly, which could be more likely. Somebody's in the line at McDonald's and they say, Hey, I think I smell marijuana coming from the car in front of me. What happens then? Well, that's less than what Mr. Strenfus said. He said, I smell marijuana coming from the car ahead of me. So if somebody says, I think, then there shouldn't be a Terry stop. If he says, I smell it, there shouldn't be. Again, I'm not going to drop bright line rule. I don't think this court should. It's the totality of the facts that dictate what happens. But I think that if I'm a 911 operator and someone says, I think I smell marijuana coming from the car ahead of me, it would be a natural question. It would be a natural instinct to ask, Why do you think that's the smell of burning marijuana coming from the car ahead of me? What if that doesn't happen at the dispatch? I'm sorry. What if that doesn't happen? Then that's another case. Okay. Your answer. Let me ask you this. Let's say that this gentleman calls in to dispatch and says, and I think he was pretty emphatic with his language to the dispatcher. I am very sure that I'm smelling reeking, I think was the language. Freak it. Freak it. Freak it. Yeah, whatever. But anyway, here's my point. Dispatcher says, well, you know, it's a citizen. I don't have a foundation. Let it go. And he is involved in a vehicular homicide down the road because he's clearly under the influence of marijuana. So here's my question. Doesn't the police, don't the police have an obligation, if not a duty, an obligation to investigate when a citizen calls who gives his name, gives his address, gives all his identifiers and says, I think the guy driving that car is smoking cannabis because I smell the burnt odor. Don't they have an obligation to see if that operator, the operator of that vehicle is impaired? Yes. And how do they do that without stopping the car? Well, precisely. And that was the reason Schaefer and Ewing, they said because it was a car being driven, it's a rolling bomb or some sort of terminology like that. I mean, as opposed to the hypothetical of I'm walking my dog and I smell it wafting off the front porch. Yeah. I mean, that's part of the totality of the circumstances is identification. I'm looking at more of a policy consideration here. If the police do nothing and based on this citizen's apparent good faith call. Right. Isn't that somewhat of a not fulfilling their obligation? Well, exactly. Investigate? Yes, that is an obligation of the police. Was that raised? I'm sorry? Was that issue raised? That argument by implication, but. I don't know. What's the standard review? Manifest weight, mixed question, law of facts, manifestly or wrongly? I'd say mixed. All right. We decided. And I'd say it's mixed question. Cause fact, it would have to be against the manifest way to the evidence. I don't think there was any evidence question here. It was a legal question, which makes it. Okay. No, no, no, no. Ultimately it's. So you're saying the lack of a certification or some sort of. Evidence establishing some knowledge or expertise on behalf of the informant. Is not necessary as a matter of law. Or are you saying that in this instance, that as a matter of law, you have to conclude if there's nothing to impeach the conclusion that the person had the expertise to know. I'm saying based on the totality of facts. It's unreasonable to require someone who calls up nine 11 and gives a tip. It says I'm so-and-so I'm. Basically. Say in very definite terms without equivocating that. He smells burning marijuana coming from the car ahead of him, which is illegal under all circumstances. And as a particular consideration for someone who's driving a car. Does it make any difference whether or not the cops hauled him out of the car and put them in cuffs. Without smelling the marijuana. Prior to handcuffs. Prior to. Getting that is. Are there different standards based upon whether or not it's a Terry stop a seizure or an arrest. Would it make any difference if what ensued after this conversation with the nine 11 operator. You would have gotten different results from the police. The Mr. Stroph is statement. Is what allows the police. To stop the car. Unless it was a consensual encounter, which we just want is there different standards. To weigh the evidence or to consider the evidence. Depending on what. And ensues for purposes of whether the police officers. Either treated it as an articulable suspicion and therefore did a Terry stop or whether or not they considered it sufficient for purposes of problem cause and arrested the person without more. I don't think so. I mean, it would have to have the evidence necessary. The articulable suspicion for his Terry stop. I think that. Their actions. There's no debate for the defense that their actions were within the scope of what Terry stop. Encompasses. And at that time. Then officer. Smelled. This was a motion. Was granted. Well. For purposes of motion. Don't they have to show that whatever the police officers did was improper. And therefore, depending on what the police officers did. If they arrested him, that showing that what they did was improper was a little bit more difficult to establish, then. Or maybe it'd be easier to establish. Then it would be if. The police officers. Did a Terry stop. And therefore, it would be a little bit more difficult to prove that their Terry stop was improper. I really don't know how to answer that. In the context of the motion to suppress, don't you have to relate the facts as given to determine whether or not the police action was reasonable? Well, the police action would be reasonable if it was based on a reasonable excuse me, an articulable suspicion. Well, that's really the whole question. Is a citizen saying that without providing any evidence of how they know it's burnt cannabis provides an underlying reasonable suspicion? Right. But an articulable suspicion is not the basis for an arrest. No, but it is the basis for a stop. I mean, there is a difference between a stop and a full rest. I mean. I don't think that's in dispute. Let me ask you this, Mr. Stevens. Are you familiar with this case? People versus Allen. 375 Illinois Apollo 3010. No, it's not ringing a bell. I'm sorry. It's not ringing a bell? No. Well, let me just wave a seat in your mind on this issue. It seems to me that, I mean, obviously a compelling argument could be made. It could be a foundation. However, one of the things that could fill that in, what about if the smell of burnt cannabis is a distinct matter of common knowledge? Would that make a difference? Yes, that's basically what I'm saying. That's what you're saying in so many words. Are you aware of any case law that holds or infers that proposition? Well, I hope Allen does, even though that would be embarrassing to me for not having sight of it. People versus Allen. 375 Illinois Apollo 3010. Anything further on your argument? No. No? No. All right, thank you. Thank you. Thank you, Ms. Johnson. On behalf of the appellant. Good morning, Your Honor. Counsel, and please support. My name is Erin Johnson. I'm here on behalf of the defendant, Appleby, Mr. Topar. I'd like to start by saying that, you know, talking about whether or not there needs to be more support of this caller's conclusion, this court's consistent position has been that there does need to be more to support a caller than just a conclusion. There needs to be some basis for their conclusion. If we look at Minks, and this is in the context of intoxicated drivers, but I think it's very relevant to the question Justice Jorgensen asked. In the context of intoxicated drivers, this court has consistently held that it's not enough for someone just to say, hey, there's a guy in front of me, he's intoxicated, and hang up. Like, I'm a citizen, this is my name, he's intoxicated. The police can't just pull that person over unless either the police see something or the citizen gives additional information. He's intoxicated because he's swerving. He's leaving, he's doing this. Right. How about he's intoxicated because I can smell the odor of alcohol wafting back? Right. And as far as I'm aware, I couldn't find a case that says that. But, I mean, I'm trying to take your analogy, saying the driver in front of me, in my opinion, is intoxicated without more, versus the driver in front of me is intoxicated because I can detect the odor of alcohol, a gin and tonic, beer, whatever, coming into my area and I can smell it. Therefore, and because it's strong, that's what I say to the dispatcher when I call. Because I agree with you, the conclusion, I'm intoxicated, is far different than saying, intoxicated because I can detect an odor. Well, I think there's a question of whether or not someone could actually, that's a kind of fact question, could someone smell alcohol coming from a car in front of them? And just because of the smell of alcohol, alcohol is not necessarily legal unless it was coming from the driver. I mean, there could be a six-pack that broke open in the trunk, and that's why that car smells like alcohol. That never happens to the defendant. Well, certainly we could imagine a scenario. But I think also when we talk about questions of fact, I think Mr. Stevens did a good job of reciting facts, but I would point out that in this case, the driver, Mr. Topper, was actually behind the caller. He says, the guy behind me smells like he's smoking cannabis. But then there's no other observation. There's no, I see him passing a joint, there's a cloud of smoke. This is someone who's behind him, so we would assume he can see in his rear view some of what might be going on. Additionally, you have the problem of this is a McDonald's drive-thru where there's multiple vehicles. So not only how do we know that Mr. Strophus has a basis for saying he recognizes the smell of cannabis, but also to say that he could tell what car it's coming from without saying, I know because there's a cloud or I can see this guy passing a joint. I think that without Mr. Strophus supporting his conclusion that the car behind me smells like cannabis, it isn't enough. So let me ask you this question. What are the police supposed to do with that information? That he smells cannabis? Coming from the car behind me. Certainly if they wanted to, you know, it's just like in the case of the intoxicated driver. He doesn't have to be intoxicated. It's possession of cannabis. That's enough. Right. But when we're talking in the context of a driver, a caller's giving me incomplete information and I'm the police. Certainly I could get behind that vehicle and see if they do anything. And then if they do do something, they make a lane violation, they fail the signal, then I can pull them over for that traffic violation. Would it be something of a pretext? Well, that they've actually committed a traffic violation or given some indication they are intoxicated. If I get behind them and they're weaving, then all of a sudden there is some indication that not only do I smell cannabis, I'm seeing this car weaving. That might mean that they're intoxicated. Are you suggesting they should have followed the vehicle for a while? I'm just suggesting there is a possibility of other ways to do this. I'm suggesting that they didn't have enough to stop that vehicle at that time. That's a very logical argument. Let me ask you this. Is the smell of burnt cannabis so distinct that it's a matter of common knowledge? I disagree with the state on that. I don't think the smell of burnt cannabis is a matter of common knowledge. Certainly the states try to make some analogies to alcohol. I think there's a big difference in that alcohol is a substance that's legal for adults in Illinois to possess. Cannabis is not a substance that's legal for adults in Illinois to possess. So to presume that our entire citizenry has knowledge of an illegal substance, I think, would be an incredible leap for this court to take. A harsh judgment on our society. I would say so, Your Honor. And I think for this court to say that the entire citizenry can be presumed to recognize the smell of it. I don't know that we would ever say that. I'm just throwing out part of the argument. What about this People v. Allen case? Have you read that? I'm sorry. I'm not familiar with that, Your Honor. And since this is my day for citing cases, what about the State v. Lipke, L-I-C-H-T-Y case out of Oregon? I'm sure she hasn't read that one. Okay. But here's what it ostensibly says. Identified citizen report that a person had a bag of coke in his wallet was sufficiently reliable to support a reasonable suspicion as members of society generally know the appearance of cocaine. I'd have to disagree with that. You might want to take a look at that one. I certainly will, Your Honor, but I'd have to strongly disagree with that Oregon. This is the Second District of Oregon. I realize that these are actual cases. But I think when we talk about going off the idea of the Second District, I think when we look at, again, what our district has held, what this court has held, and I know it's different when we're talking about a small v. a pass kid driver, but there is a lot of case law that suggests that adults can recognize when people are intoxicated. That's pretty well established. Right. That's sort of the analogous issue here. I mean, is there a level that is a matter of common knowledge? And I don't think we can say that the smell of cannabis, especially because when we look at it, and I think I disagree with Mr. Stevens that the trial court mixed up probable cause and reasonable suspicion. I think when you look at the trial court's opinion, it's very clear he's using the language of Terry Stout. He's saying reasonable and articulable suspicion. But what the reason for looking at cases such as Stout and Smith in the trial court's opinion where they're saying an officer needs to lay a foundation for how they can detect cannabis, that's where we're at is that having this olfactory sense where I can detect this particular smell and know where it's coming from is more of a specialized knowledge that we do expect that officers have from their experience and training, but we don't expect that citizens have. And that's why these cases, I think, were cited by the trial court, are the only real guidance that we have in the case law. The only real guidance we have is that officers need to say, yes, I've smelled cannabis on this many occasions. And I think, obviously, since this is a Terry Stout and it's not probable cause, if Mr. Stropas, if we had different facts and Mr. Stropas said, I've smelled cannabis 100 times and, you know, my roommate smokes cannabis, he would have to indicate himself. He could say, my roommate smokes cannabis daily and I know what it smells like and I can tell where it's coming from. That's a different factor. But we just have a conclusion here with no support. And that's what – I'm sorry. You know, officers are trained. Following up on Justice Jorgensen's point, she raises a very legitimate concern because society has an interest in making sure people are not traveling on the road under the influence of drugs or alcohol or whatever. So that's a real dilemma for the police if they get a call like this. But, you know, in terms of the officers are trained to recognize it's malaparte cannabis, why couldn't the dispatcher have asked the person calling in, how do you know it's cannabis? Well, and I certainly would argue – Let me say, I don't know in which case it goes. Or I do know. Or maybe they don't want to incriminate themselves either. Well, I think they can say that they recognize it without incriminating themselves. But I think that that is directly our point. This malaparte could have said, how do you know it's cannabis? Or they could have said, sir, are you familiar with the smell of cannabis? Yes, I am. I've smelled it numerous times. Okay, we have a bit of additional information. And I think that's consistent when we look at what this court has held. We look at cases like Mink's that we can't just have conclusions. And I keep going back to Mink's and also previous to that Dugan, which are both this district, because we're talking about intoxicated drivers, which is the same safety concern. We have people calling saying, hey, this guy in front of me is intoxicated. We have the same safety concern as here. And in those cases, this court found that we need to have something else other than a conclusion. We need to have some basis. And it's not unreasonable to have the dispatcher say, how do you know that it's coming from that car? How do you know it smells like cannabis? Because if Mr. Stropas had given additional facts, if he had seen, you know, they're passing this blunt back and forth, that would be a different scenario. But that's not what we have here. Do you know if the informant would have been subject to prosecution if it had been established that his phone call was false? In other words, was he be filing a false police report? I mean, certainly he could have. Yeah, if he made a 911 call with no basis, that is the basis for making a false police report. So he could be prosecuted, potentially. I mean, that gets into whether or not. Does he know that or is he going to know that? I don't know if many people know that. I mean, certainly I have defended people that didn't know that. But I think that that gets into whether or not citizen calls are reliable, is kind of what that question goes to. And there's been case law that says we can rely on these citizen reports maybe because they know they might be in trouble if they make a false report. But I'm not even saying that Mr. Stropas made a false report. I'm saying he may have made a mistaken report. We don't know if he really knows that it's cannabis or if there was a skunk nearby. And he thinks that cannabis smells like skunks. We don't know that. So you're analogizing I smell cannabis to the conclusion that the person is intoxicated. But is that a fair analysis, a fair conclusion? Because you can't stop a car. I think the person is intoxicated, as she pointed out, versus the smell of alcohol. Here he didn't say somebody in their car is doing drugs. That's not what the report was. There would be no basis there probably. But if you say, you know, I smell burnt cannabis, that's different than a conclusion, isn't it? I think it's because what he actually said, the actual quote was, it smells like they're smoking a massive amount of pot. And he said there. He said it was overwhelming the way he described it. The car is reeking marijuana. His car. He said it's freaking reeking in my truck. But again, he doesn't say, I mean, I guess by that logic, is the passenger smoking cannabis? Or we don't have any additional facts that there was a cloud or I see smoke or I see them doing something because they're behind him. So maybe they just smell like, maybe their clothes are just, you know, imbued with the scent of cannabis at all times. Well, let's assume that was the case. There would still be a basis for stopping. If a police drive by or if it's the scenario of Justice McLaren positive, is walking with a cup of coffee, you know, back to his squad car, and he smells marijuana emanating from inside the car. Does it matter if it's their clothes are wafting? Wouldn't he have the right to inspect or check that? Well, a police officer in that scenario has. But, I mean, this is the police officer relying. Because that's, I think, the important difference is we have police officers who are relying for their reasonable suspicion on a citizen. And that's what all the case law gets to is how can the police rely, not on their own observations, but on a citizen's observation to justify, to make this reasonable honor to the citizen. But if a citizen who gives their name, gives their phone number, how they can be reached, corroborates who they are, isn't that an inherently reliable tip? Based on the, it's one of the factors that adds to its reliability, but it's not the beginning and end of the analysis. It's not just because anyone gives their name. It certainly does enhance it. Certainly. And that is one of the factors that's laid out in all the case law of how can we tell if a tip is reliable. But, again, I would argue that that's not where the analysis begins and ends. And that's why we have cases like Dugan or makes where we say, yes, we knew it was a citizen. They gave us all the information. But what they gave us still wasn't enough for reasonable article of suspicion. And that's what I'm saying here. What Mr. Stropas gave us was just not enough. And the trial court was correct in finding that. He gave us his name. He gave us all that stuff. But what he gave us was not enough for reasonable article of suspicion. The basis of his knowledge was lacking, ergo the motion should have been granted. Yes. So you're saying that his testimony wasn't even admissible? Mr. Stropas? He didn't testify. His 9-1-1 tape was played after the state made a motion to admit it later. To me, the gist of your argument seems to be that 9-1-1 operators need to be either assistant state's attorneys or paralegals. And in the conversations they have, they have to make legal judgmental decisions as to whether or not there is sufficient cause to render a radio dispatch to officers at large, and if so, to what extent the police officer can do relative to whether it should be a stop, an arrest, whatever. And the idea that you are creating this additional level of bureaucracy, for want of a different term, or an additional level of investigation, I think is problematic. And I'm listening to what your argument is, and you're talking about it's just not enough, and I'm saying to myself, if somebody tells me that they smelled marijuana and that it was so ubiquitous that it was in my truck or in my vehicle and it came from the vehicle behind me, I don't know that a 9-1-1 operator would say, sir, what experience do you have? Do you have a CCI? What is it that we can or I can communicate this to police officers or officers that they should stop you and, if necessary, drive you off the road or drive the alleged defendant off the road because he may be so high he'll run into a school bus and kill a lot of kids? I guess I would clarify that I'm not suggesting that we impose this duty on the 9-1-1 operators who need some sort of legal information, but certainly we've all heard 9-1-1 calls where they're saying, okay, what's he doing, where's he going, where's this person in relation to you? Simple questions of, okay, what are you seeing, how do you know this? And I'm not saying they have to have some detailed foundational, like as if the state's attorney would be laying a foundation at court. A simple question of how do you know that, what are you seeing, would clear this up. But, moreover, you can have the person volunteering. Is the duty then on the 9-1-1 operator to take the facts or the testimony and not make any inquiry or investigation whatsoever? And then in the process of reporting at the side number, this isn't sufficient to report, I'll just put it down here on my maybes. Or, if they do make a dispatch, they qualify it in some way, shape, or form and say you can do certain things, or do they just leave it to the patrol officer to decide what they're going to do? I mean, my understanding, and again, I don't pretend to be an expert, would be that all that happens is information is communicated to the 9-1-1 operator. They communicate it to the officer. I'm not saying that they should be any kind of gatekeeper or any kind of anything. I'm saying that based on the cases that we already have, and I'm not trying to impose new duty. When we look at the cases that already exist, we talk about maybes, even the cases that the state cited, very briefly, even though they are different than the cases from our district in their holding, Schaefer and Ewing both have information that was given to the officers where the caller had an interaction with the driver. One was at an animal hospital. They were the employee that interacted with them. One was at a Wendy's. So I'm not saying there's a duty. I'm saying we have to look at the facts and decide whether or not those officers had enough information. And based on Maybes, based on the case law that we have here, they didn't. Now, we can posit that if the 911 operator did something different, and that's something the police could say, hey, we want you to ask this question because we want to have enough to stop people. That's really a policy issue for the police agencies to decide. But what is for this court to decide is whether or not, based on the information that was given to the officers by the dispatcher from Mr. Strophus, was there enough to make this stop. And based on the case law and based on the fact that I do not believe it should be this court's decision or that it's just true in general that everyone recognizes the smell of cannabis, there wasn't enough to make this stop. And the trial court was correct in its analysis, so I ask that this court affirm the trial court's decision. All right. Thank you very much. Mr. Stevens, do we vote? I vote. Okay. All right. Thank you. Appreciate your arguments on this very interesting case this morning. We take it under advisement and a written disposition will issue a due course. We are adjourned to prepare for the next case. Thank you.